RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0326P (6th Cir.)
File Name: 04a0326p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

ELMA MULLAI,

   *Petitioner,*

  *v.*    No. 02-4313

JOHN ASHCROFT, Attorney
General; IMMIGRATION AND
NATURALIZATION SERVICE,

   *Respondents.*

On Appeal from the Board of Immigration Appeals.
No. A73 616 876.

Submitted: August 6, 2004

Decided and Filed: September 27, 2004

Before: KENNEDY, SUTTON, and COOK, Circuit
Judges.

_____

## COUNSEL

**ON BRIEF:** Robert M. Birach, Detroit, Michigan, for
Petitioner. James A. Hunolt, Emily A. Radford, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondent.

_____

## OPINION

_____

COOK, Circuit Judge. Elma Mullai, a native and citizen of
Albania, seeks review of a decision of the Board of
Immigration Appeals affirming, without opinion, the order of
an immigration judge denying her request for asylum and
withholding of removal. Because substantial evidence
supports the IJ's conclusion that Mullai neither suffered past
persecution nor has a well-founded fear of future persecution
in Albania, we deny Mullai's petition for review.

I

Mullai, age fifty-two, was born and raised in Albania, the
daughter of a wealthy, Muslim family. After coming to
power during the 1940s, the Communists confiscated her
family's property and also arrested one of her uncles because
of his religious activities, sentencing him to seven years of
imprisonment. Another of Mullai's uncles escaped arrest by
fleeing to the United States.

According to Mullai, the Communist government targeted
her for persecution on at least five occasions. In April 1989,
after she criticized the president of Albania in a private
conversation, the secret police detained her in jail for one
week, forbidding any contact with her family and repeatedly
threatening her. She recounted to the IJ that on four separate
occasions from December 1990 through December 1991, the
Albanian police beat and kicked her during her participation
in protests against the government. She explained the lack of
medical records of treatment for the injuries sustained during
the beatings by her decision not to seek medical treatment.
Despite these experiences, Mullai received a college
education under the Communist regime and held a chemical
engineering position in a factory.

Mullai alleges that after the Communist government collapsed in 1992, her persecution continued under the new Democratic Party government. In November 1994, at a protest at which Mullai gave a speech, the police again beat and kicked her. Then again two years later, after participating in a protest that she helped organize, the secret police detained Mullai in jail for two days without food or water and threatened her. Two days after being released, she lost her job. These events prompted Mullai to seek and obtain a visa to visit the United States. But she did not leave Albania until a few months later, after the government—without apparent provocation—again took her into custody and deprived her of food and water for two days.

Mullai entered the United States on October 2, 1996, with authorization to remain for six months. Because she remained beyond the authorized six months, the INS served her with a Notice to Appear in November 1997. Mullai then applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture, on the basis of past persecution due to her religion, membership in a particular social group, and political opinion, and because she feared future persecution in Albania. After a hearing, the IJ found that Mullai failed to demonstrate that she was entitled to asylum on the basis of her claims of religious and gender persecution. With respect to her allegations of political persecution, the IJ concluded that Mullai had not suffered past persecution and that even if she had, changed country conditions rebutted the presumption of a well-founded fear of future persecution.

The BIA summarily affirmed the IJ's denial of Mullai's application for asylum, withholding of removal, and protection under the Convention Against Torture, and granted Mullai a thirty-day period for voluntary departure (ending November 25, 2002). Mullai now requests review of the denial of her application for asylum and withholding. She also filed a motion for a stay of removal on December 18,

2002—twenty-four days after the voluntary-departure period expired. This court granted that motion.

## II

Because the BIA affirmed the IJ's decision without opinion, we review the IJ's decision as the final agency order, *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003), under the "substantial evidence" standard. Under this deferential standard of review, we uphold the IJ's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We are not entitled to reverse "simply because [we are] convinced that [we] would have decided the case differently." *Adhiyappa v. INS*, 58 F.3d 261, 265 (6th Cir. 1995) (internal quotation marks omitted). "Rather, in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (citing *Elias-Zacarias*, 502 U.S. at 481).

### A. Asylum

Mullai bears the burden of establishing that she is a "refugee" eligible for asylum either because she has suffered actual past persecution or because she has a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a); *Elias-Zacarias*, 502 U.S. at 481. If she demonstrates past persecution, she is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The government may overcome this presumption by establishing by a preponderance of the evidence that there is "a fundamental change in circumstances such that [Mullai] no longer has a well-founded fear of persecution in [her] country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A).

Substantial evidence supports the IJ's determination that Mullai did not experience past persecution. For one thing, her ability to obtain an advanced degree under the Communist regime does not reconcile easily with her claim that the Communist government targeted her for persecution. For another, her treatment by the Communist government could be reasonably viewed as motivated by her status as a protester rather than religious persecution. With respect to the Albanian Democratic Party's treatment of Mullai, the incidents Mullai alleges do not meet this circuit's definition of "persecution"—"more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). And although Mullai obtained a visa soon after her detainment in May 1996, she waited over three months (until after she was again detained in September 1996) to leave Albania. Because we find no evidence in the record compelling us to reverse the IJ's conclusion that Mullai did not suffer past persecution, we uphold the IJ's decision that Mullai failed to demonstrate past persecution severe enough to merit a grant of asylum on humanitarian grounds. *See In re Chen*, 20 I. & N. Dec. 16 (BIA 1989) (holding that petitioner, who with his family members suffered persistent and severe persecution throughout the Cultural Revolution as a result of their religious beliefs, was entitled to asylum on humanitarian grounds).

Substantial evidence also supports the IJ's determination that even if Mullai suffered past persecution, changed country conditions rebut the presumption of a well-founded fear of future persecution in Albania. Although Mullai alleged persecution by the Communist and Democratic Party governments, she has not demonstrated that the current government controlled by the Socialist Party would target her for persecution. *See Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir. 1996); *Yousif v. INS*, 794 F.2d 236, 244 (6th Cir. 1986). As the IJ noted, both the United States Department of State reports (the Country Reports on Human Rights for Albania

and the Profile of Asylum Claims) and Mullai's evidence describe the type of general civil disorder and lawlessness to which anyone living in Albania would be exposed. At worst, the record contains allegations of the Socialist government's persecution of Democratic Party members—the party that previously persecuted Mullai.

As to our review of the IJ's conclusion that changes in country conditions trump any presumed well-founded fear, Mullai urges us to assess as unwarranted the weight the IJ gave to United States Department of State reports in evaluating her fear of future persecution. But Mullai herself provided a number of the State Department reports on which the IJ relied (including the Country Reports on Human Rights for 1997 and 1999). Although this circuit acknowledges that State Department reports may be problematic sources on which to rely, *Koliada*, 259 F.3d at 487 (citing cases from the First, Fourth, and Seventh Circuits), in other cases we adopt the view that such reports "are generally the best source of information on conditions in foreign nations." *Kokaj v. Ashcroft*, 100 Fed. Appx. 506, 508 (6th Cir. 2004). And we have relied on State Department reports when reviewing an IJ's decision. *See, e.g.*, *Abay v. Ashcroft*, 368 F.3d 634, 639 (6th Cir. 2004). Thus, the IJ's reliance on these reports is supportable.

### B. Withholding of Removal

Mullai also seeks review of the IJ's denial of withholding of removal. To obtain such relief, she must show by a "clear probability" that her life or freedom would be threatened on account of her race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407, 429-30 (1987); *Mikhailevitch*, 146 F.3d at 391. Because the lesser standard for establishing asylum eligibility eludes Mullai, we conclude that she cannot meet the more stringent requirements for withholding of removal. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987); *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003) ("[A]

greater quantum of proof is required as to the likelihood of persecution in the country of risk in order to establish eligibility for withholding.").

### C.  Voluntary Departure

Having concluded that substantial evidence supports the IJ's denial of asylum, we next address Mullai's alternative request that the court reinstate the BIA's grant of a thirty-day period for voluntary departure. Because we lack the authority to grant Mullia's request, we deny it.

The relief of voluntary departure is governed by § 240B of the Immigration and Nationality Act, 8 U.S.C. § 1229c, providing that "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense" (thereby avoiding the usual consequences of deportation) if the alien is not otherwise disqualified. Voluntary departure thus is typically granted by the immigration judge to qualifying aliens in tandem with the denial of the more favorable relief of asylum, withholding of departure, or the like. If the alien appeals a decision of the immigration judge to the Board of Immigration Appeals and the Board affirms, it too may grant a period of voluntary departure.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) includes provisions that preclude judicial review of the grant or denial of voluntary departure. The statute provides: "No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) of this section, nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure." 8 U.S.C. § 1229c(f). Additionally, 8 U.S.C. § 1252(a)(2)(B)(i) provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [8 U.S.C.] section 1229c [voluntary departure] . . . ."

Though jurisdictional questions abound among the circuit courts concerning voluntary- departure decisions, we answer here only the question of whether a court may reinstate voluntary departure where the voluntary-departure period granted by the BIA expires before petitioner seeks either a stay of removal or a stay of voluntary departure.

Mullai never moved to stay the time for voluntary departure, and she only moved to stay removal after the expiration of the voluntary-departure period. As a result, the period for voluntary departure authorized by the Attorney General expired. Any judicial order to "reinstate" at this time would necessarily authorize a *new* opportunity to voluntarily depart, a function assigned to the Attorney General's office by 8 U.S.C. § 1229c and denied to the courts by 8 U.S.C. § 1229c(f) and § 1252(a)(2)(B)(i). Our application of the statutes today is consistent with the development of this issue in the majority of circuit courts that have considered it after the passage of the IIRIRA. *See, e.g., Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 282 (3d Cir. 2004) (collecting authorities that hold that courts do not have jurisdiction to reinstate or extend a voluntary-departure order).

This lack of a pre-expiration motion to stay disqualifies Mullai from benefitting from our decision in *Nwakanma v. Ashcroft*, 352 F.3d 325, 327 (6th Cir. 2003). *Nwakanma* relied on a court's injunctive power to stay pending matters and thereby avoided colliding with the IIRIRA constraints on courts' jurisdiction: "[I]n granting a stay of voluntary departure, we do not pass on the substance of the decision to grant voluntary departure; we only stay the immediate effectiveness of the relief already granted by respondent in his discretion, to allow the petitioner to receive appellate review." *Id*.

In Mullai's case, due to the absence of a stay, the discretionary relief granted by respondent Ashcroft expired by its own terms. Thus a decision at this time to reinstate would

pass on the substance of the decision to grant voluntary departure rather than staying its effectiveness.

### III

We accordingly deny Mullai's petition for review and deny her request to reinstate the expired voluntary-departure period.