NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0031n.06
Filed: January 12, 2005

No. 03-3966

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EL HASSANE OUATTARA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| JOHN ASHCROFT, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: NELSON and COOK, Circuit Judges; SARGUS, District Judge.*

COOK, Circuit Judge. Petitioner El Hassane Ouattara seeks review of a final order of

removal. The Board of Immigration Appeals denied Ouattara's petition for asylum and withholding

of removal and ordered Ouattara removed to his native country of Mauritania. Because substantial

evidence supports the BIA's conclusion that, due to changed country conditions in Mauritania,

Ouattara no longer possesses a well-founded fear of persecution, we deny the petition for review.

I

Ouattara is a citizen of Mauritania who entered the United States without valid entry

documents. The INS issued him a Notice to Appear in Immigration Court to initiate removal

_____

*The Honorable Edmund A. Sargus, United States District Judge for the Southern District
of Ohio, sitting by designation.

proceedings. Ouattara conceded that he was removable, but sought asylum and withholding of removal under 8 U.S.C. § 1158 and the United Nations Convention Against Torture, respectively. In Immigration Court, Ouattara alone testified—through a French interpreter—on his own behalf. Ouattara argued that asylum and withholding were appropriate because the government of Mauritania had persecuted him based on his nationality (Soninke tribe); political beliefs (the government believed Ouattara belonged to the dissident FLAM party); and religion (Christian).

The immigration judge, however, denied Ouattara's petition for asylum and withholding. The IJ found that Ouattara lacked credibility based on several inconsistencies between Ouattara's asylum application and his testimony during the hearing. Because the Immigration Court found Ouattara not credible, it denied him asylum and withholding. Alternatively, even assuming Ouattara's credibility regarding his past persecution, the IJ found granting asylum and withholding inappropriate due to sufficiently improved country conditions in Mauritania that dissipate the future threat of ethnic, political, and religious persecution against Ouattara.

Ouattara appealed to the BIA, which affirmed without opinion. *See* 8 C.F.R. § 1003.1(e)(4). Ouattara now petitions this court to reverse the BIA's decision and grant his application for asylum and withholding.

II

A. Due Process Violation

Ouattara raises three arguments on appeal.[1]  He first argues that the failure to provide him with a competent interpreter during his hearing constituted a due process violation.  Since the BIA affirmed the IJ's decision without issuing an opinion, this court reviews the IJ's explanation as that of the BIA's.  *Denko v. I.N.S.*, 351 F.3d 717, 730 (6th Cir. 2003).  And this court reviews the IJ's legal determinations—including determinations concerning interpreter competency—de novo.  *See Amadou v. I.N.S.*, 226 F.3d 724, 726 (6th Cir. 2000).

To succeed on a due process claim in this context, the petitioner must show both incompetence by the interpreter and resulting prejudice.  *See Larita-Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000).  An interpreter may be incompetent if his skills are questionable.  *Gonzales v. Zurbrick*, 45 F.2d 934, 937 (6th Cir. 1930) (interpreter's "capability should be unquestioned"). *See also Amadou*, 226 F.3d at 727.  Evidence of a questionable interpreter includes incorrectly translated words, unresponsive answers by the witness, and the witness's expression of difficulty understanding what is said to him.  *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000).  And prejudice means that the interpreter error significantly affected the outcome of the proceedings.  *See, e.g., Amadou*, 226 F.3d at 727.

---

[1]Ouattara briefed a fourth argument, challenging the BIA's procedure of affirming an IJ decision without issuing an opinion.  But Ouattara's counsel expressly waived this issue at oral argument, and thus we do not consider it.

Also, Ouattara, in response to a question from the bench at oral argument, filed a letter brief on the issue of "humanitarian asylum" under 8 C.F.R. § 1208.13(b)(1)(iii)(A).  As pointed out by the government in response, however, Ouattara never raised the issue of his eligibility for humanitarian asylum before the BIA or in his brief to this Court, thereby forfeiting any claim to such relief.

Our review of the hearing transcript suggests reason to doubt the competency of Ouattara's interpreter, including apparent miscommunication and a translation error that potentially prejudiced Ouattara by tainting the IJ's conclusion about his credibility. But since we find no error in the IJ denying Ouattara's petition on the alternate ground that he failed to demonstrate a well-founded fear of persecution due to changed country conditions in Mauritania, as set forth below, we do not decide this due process claim. *See, e.g., Daneshvar v. Ashcroft*, 355 F.3d 615, 622 (6th Cir. 2004) (finding potential interpreter error to be legally irrelevant in light of independent country conditions basis for denying asylum).

## B. Adverse Credibility Determination

We similarly refrain from scrutinizing the IJ's adverse credibility determination regarding Ouattara's testimony.[2] As with the due process claim, the changed-country-conditions finding obviates the relevance of this claimed error.

## C. Well-Founder Fear Of Persecution

---

[2]If the procedural circumstances were different, Ouattara's challenge to the IJ's credibility determination might prove to be well-taken. The IJ hinged much of his credibility view on inconsistencies that, to us, seem trivial. For instance, the IJ noted discrepancies in Ouattara's date of deportation (Ouattara said January one time and June another) and whether his mother was among the various family members arrested with him (Ouattara failed to mention his mother's arrest one time and then did another). These sorts of inconsistencies do not bear on the merit of his persecution claim and thus are poor indicia of a petitioner's effort to deceive. *See Daneshvar*, 355 F.3d at 623.

Ouattara challenges the IJ's determination that the conditions in Mauritania have improved so that Ouattara no longer has a well-founded fear of persecution if sent back. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A)(change in country conditions as ground to deny asylum); 8 C.F.R. § 1208.16 (b)(1)(i)(A) (change in country conditions as ground to deny withholding of removal). The IJ relied on Department of State reports indicating that most Mauritanian refugees have returned peacefully to their native country. Ouattara contends nevertheless that the State Department reports are not enough; that the IJ needed to conduct an "individualized analysis" of Ouattara's situation in determining that it was safe for him to return. He insists that the Department of State reports give only a broad overview of Mauritania and that the reports focused neither on Ouattara's particular region in Mauritania nor his particular characteristics as a Black Christian of the Soninke tribe. Therefore, according to Ouattara, the shortcomings of the reports leave the IJ's finding of changed country conditions unsupported by the requisite "substantial evidence." *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004).

Not so. The record shows that the IJ reviewed the Department of State reports on Mauritania and found that a person in Ouattara's shoes—a Christian, belonging to the Soninke tribe, and arguably a member of the FLAM political party—would not suffer persecution in Mauritania. His finding goes on to note that Christian churches are now prevalent throughout Mauritania and that Christians have not recently been persecuted or tortured. The IJ also considered the absence of any government persecution based on political membership or social group in Mauritania. And while the IJ only generally stated that many Mauritanian refugees have "successfully and peacefully"

returned to the country, the Department of State reports confirm that refugees have successfully returned to Ouattara's particular region along the Senegal River.

This particularized review of country conditions properly rebutted Ouattara's claim of a well-founded fear of future persecution. Indeed, this immigration judge's thoroughness contrasts favorably with cases Ouattara cites on the subject of individualized assessment. *Cf. Garrovillas v. I.N.S.*, 156 F.3d 1010, 1017 (9th Cir. 1998) (BIA merely quoted a portion of the Department of State report, but failed to provide any analysis of how it applied to petitioner).

III

Because the IJ found that Ouattara failed to demonstrate a well-founded fear of persecution due to changed country conditions in Mauritania, we uphold the BIA's decision and deny the petition for review.