**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0053n.06**
**Filed: January 19, 2005**

**No. 03-3602**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BLERIM TALELLI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES BOARD OF IMMIGRATION |
| | ) | APPEALS |
| JOHN ASHCROFT, United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondent. | | |

Before:  SILER, SUTTON, and FARRIS, Circuit Judges.[*]

SUTTON, Circuit Judge.  Blerim Talelli, an illegal alien seeking to avoid removal, contends that the Board of Immigration Appeals erred when it found that he did not suffer past persecution and that he does not have a well-founded fear of future persecution sufficient to prevent his return to his native country, Albania.  Because we accept factual findings of the Board unless the evidence compels a contrary finding and because Talelli fails to present such compelling evidence, we deny his petition for review.

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

I.

Talelli testified to the following. Because his grandfather had opposed the communists in Albania at the end of World War II, the communist government seized his family's property and confined the family to internment labor camps. In 1972, he was born in one of those camps and later was transferred to another. In 1990, Talelli participated in the democracy movement that overthrew the communists, but later came to believe that the new Democratic Party was continuing to follow a communist ideology. In 1992, the government, then led by the Democratic Party, arrested Talelli and his family for petitioning for the return of the property that had been seized from them; they were beaten, held for a few days and told never to request the return of their property again.

In 1993, Talelli joined another political party, the Bali Kombetar. In view of this change, the secret police arrested him, beat him and held him for two weeks. On top of this, Talelli claims that authorities beat him on more than six occasions between 1993 and 1996 and forced him to serve in the military in a manual labor unit composed of other anti-government soldiers. Four of his relatives testified in support of his application, confirming some of the beatings and his pro-democracy activities in the early 1990s.

Talelli entered the United States in January 1997. He applied for asylum, but was required to appear before an immigration judge for having entered illegally. Talelli admitted to the immigration judge that he was removable, but he requested asylum and withholding of removal. The immigration judge denied both requests. While the immigration judge based his decision on

a finding that Talelli lacked credibility, the Board of Immigration Appeals found that Talelli's inconsistencies by themselves were not "significant enough to find him lacking in credibility." JA 2. Nonetheless, the Board found that "the severe punishment described by the respondent is not consistent with the description of country conditions presented by the Department of State." *Id.* The Board as a result declined to withhold the removal of Talelli, reasoning that

> even if the respondent has established past persecution by the Communist[] regime and by the Democratic Party, the country conditions have changed. Shortly after he left Albania, the Democratic Party was defeated by the Socialist Party in new elections of 1997. There is no reason to find that the present government of Albania has any reason to arrest or persecute the respondent.

*Id.*

## II.

On appeal, Talelli contends that the Board of Immigration Appeals erred both in finding that he failed to show past persecution and in finding that changed country conditions negate his fear of future persecution and so defeat his request for withholding of removal. Our review of these findings is limited, for the Board's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[T]o obtain judicial reversal of the BIA's determination," Talelli "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992).

Talelli "bears the burden of establishing that [he] is a 'refugee' eligible for asylum either because [he] suffered actual past persecution or because [he] has a well-founded fear of future persecution." *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004). If he demonstrates past

persecution, he is rebuttably presumed to have a well-founded fear of future persecution, but the government may overcome that presumption by demonstrating a fundamental change in circumstances that removes the foundation for a fear of future persecution. *Id.*

Although the Board of Immigration Appeals disagreed with the immigration judge's decision that Talelli's testimony lacked credibility due solely to inconsistencies in that testimony, it concluded that his testimony conflicted with the State Department's account of the conditions in Albania, and so upheld the immigration judge's finding that Talelli failed to demonstrate past persecution. We may overturn this finding of no past persecution only if Talelli demonstrates evidence compelling reversal. *See Elias-Zacarias*, 502 U.S. at 483–84. Talelli does not meet this burden. Other than his own testimony, Talelli presented little, if any, evidence demonstrating that his family's opposition to communism was well known, that he was imprisoned or beaten or that he received medical treatment *as a result of* those beatings. The medical bills submitted by him show only what treatments he underwent; they do not identify the underlying medical condition or its cause. JA 259–61. He likewise failed to support his allegation that the communists covertly continued to control the Albanian government after the communists' apparent fall from power in 1990, an allegation directly contradicted by the State Department reports. *See* JA 274 ("[Some applicants] claim little has changed politically and they are harassed because they espouse true democracy. . . . Given the democratization which has taken place, these claims generally lack substance."). And while various relatives testified on Talelli's behalf, their testimony does not compel credence. As the government points out, "Talelli just happened to be demonstrating right outside the front door of these relatives when he was beaten and dragged off, that they just happened

to hear some noise and open the door in time to see the police arrive, and that these same relatives just happened to be in the United States and available to testify." Resp. Br. at 24. These facts do not compel a reasonable adjudicator to find past persecution.

But, even if Talelli did experience persecution in the past, he failed to present compelling evidence that the Board acted unreasonably in finding no fear of future persecution. The Board found that changed country conditions rebutted the presumption of a well-founded fear of future persecution, a finding that we may overturn only if Talelli demonstrates that the evidence compels a contrary conclusion.

In arguing that country conditions have not changed since 1997, Talelli points to several State Department reports issued after that date. *See* Talelli Br. at 11. But the cited portions of these reports do not advance his cause. One of them recounts the historical conditions in Albania *prior* to 1997. Another shows that country conditions *have* changed. *See* JA 269 ("Applicants frequently and incorrectly seek to portray the new government as 'Communist' and desirous of persecuting political opponents. While the settling of accounts persists, there is little evidence that individuals are targeted for mistreatment on political grounds."). And two other segments of the reports show that the new Albanian government has harassed and even beaten some journalists, a troubling finding to be sure but one that does not bear on this case as Talelli has never asserted that he worked as a journalist.

Nor does Talelli gain traction by challenging the accuracy of a sentence in the 2001 State Department profile, which says: "All political parties have been active in most of the country without a pattern of mistreatment, even in the dark days of 1997." Talelli Br. at 11. Talelli offers

no explanation why this statement in particular or this report in general is false except to say (in one sentence) that it is inconsistent with the many grants of asylum to Albanian nationals made between 1997 and 2002. *Id.* But, of course, we have no way of knowing the grounds on which these applications were granted. While Talelli describes them as "grants of asylum based upon political persecution," *id.*, the data upon which he relies gives no indication as to whether these grants rested on some other form of persecution, such as racial or religious persecution, *see* U.S. Department of Justice, Index of Frequently Requested FOIA-Processed Records *at* http://www.usdoj.gov/eoir/efoia/ foiafreq.htm (yearly asylum statistics by nationality). We do know, however, that this court has held that changed country conditions may undermine a claim of future persecution in Albania. *See Mullai*, 385 F.3d at 639 (noting that, with respect to an alien who entered the United States in October 1996, "changed country conditions rebut the presumption of a well-founded fear of future persecution in Albania").

One final point. It is true that in some instances "sever[e]" past persecution may provide a basis for a grant of asylum even in the absence of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(iii)(A). But Talelli did not raise this issue and accordingly has waived it. *See Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996).

III.

For these reasons, we deny the petition for review.