NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0424n.06
Filed: May 23, 2005

No. 03-3158

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PELLUMB SHPATA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| ALBERTO R. GONZALES, Attorney | ) | IMMIGRATION APPEALS |
| General; IMMIGRATION AND | ) | |
| NATURALIZATION SERVICE, | ) | |
| | ) | |
| Respondents. | | |

Before: BOGGS, Chief Judge; COOK, Circuit Judge; BEER, District Judge.*

COOK, Circuit Judge. Petitioner Pellumb Shpata seeks review of a final order of removal.

On appeal, Shpata raises two procedurally foreclosed claims and another claim of the sort this circuit

has previously rejected. Finding changed country conditions support the IJ's determination, we

deny Shpata's petition for review.

I

Shpata, an Albanian national, entered the United States without valid entry documents. He

conceded removability and sought asylum and withholding of removal based on persecution for

---

*The Honorable Peter H. Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

political opinion. During proceedings in Immigration Court, Shpata testified that he and his immediate family suffered violent attacks in Albania because of his political involvement in the Socialist Party.

The IJ denied Shpata asylum and withholding and ordered him removed, finding Shpata's testimony concerning past persecution incredible. The IJ based her finding on several ostensible implausibilities and one material inconsistency in Shpata's testimony. During a previous immigration interview, when asked, "have you ever been part of the government of Albania?" Shpata responded, "No, I used to be a veterinarian." But during his hearing, he testified that he had been a member of the Albanian Parliament. Further, Shpata failed to present witnesses to corroborate his testimony, even though his family lived in the area and could have testified on his behalf. In addition to questioning Shpata's credibility, the IJ found many of his alleged instances of violence—in particular, the rape of Shpata's daughter—likely the result of general civil unrest in Albania, not politically associated attacks. Thus, the IJ concluded that Shpata failed to demonstrate past persecution for political opinion.

Alternatively, the IJ found, even assuming Shpata to be credible and to have suffered past persecution for his political opinion, changed country conditions in Albania would allow Shpata to return without fearing future persecution.

Shpata appealed to the BIA, raising only issues concerning the IJ's finding of past persecution, and the BIA affirmed without opinion.

II

Shpata raises three arguments on appeal. First, he alleges an absence of substantial evidence supporting the IJ's credibility determination and ultimate conclusion that Shpata did not suffer past persecution. We are inclined to agree with Shpata that the IJ's credibility determination was not well founded.

Shpata was a veterinarian for the Ministry of Agriculture. In 1991, he joined the Socialist Party. That year, Albania held its first multi-party election after the end of Communism, and Shpata was elected as a parliamentary deputy for the Socialist Party. Although he decided not to run in the next election, Shpata remained active in the Socialist Party. He seems to have been involved in debates over privatization, and he served as Vice Chairman of the election commission during the parliamentary election of 1996.

At his credible-fear interview, when asked if he had "ever been part of the government of Albania," Shpata answered no. But at the hearing, when the IJ asked him if he had "government jobs" or if he was "affiliated with the government," he answered in the affirmative. The IJ found this to be a significant inconsistency, even after Shpata explained that "government" in Albanian refers to the prime minister and his cabinet. As he explained, to an Albanian, being a member of parliament or an employee of a ministry is not the same as being a "part of the government." Of course, in a socialist country, nearly everyone has what Americans would consider a "government job"—and Shpata could not have intended to deny this. The judge refused to credit the distinction

between the two definitions of the word "government," however, finding it "nonsensical" and "totally implausible."

We disagree with the IJ's take on this. In many languages, the word "government" has a specific, technical meaning, referring to the prime minister and cabinet in much the same sense that we use the word "administration." In the United States, if a minority-party member of Congress or a federal civil servant were asked whether he was a member of the "administration," he could well reply that he was not, yet if he were asked whether he had a "government job," he would answer that he did. Americans would find no discrepancy in these answers. Similarly, there is no discrepancy between Shpata's answers when we consider that he used the word "government" in more or less the same sense that we would use "administration."

How the immigration officer and IJ's questions were conveyed to Shpata depended a great deal on the translator's choice of words. Shpata did not choose his translators, he had never been to the United States before, and there was no reason why, upon stepping off the airplane, he should have known how Americans use the word "government." Because the meaning of words in a foreign language is not a subject matter left to the discretion of an IJ to be determined by assessing the demeanor of a witness, the IJ erred in finding a discrepancy, and should not have relied upon it in making her credibility determination.

Although the record does not support the IJ's credibility determination, Shpata did not challenge the IJ's alternate reason for denying asylum and withholding—changed country conditions

in Albania, supported by State Department reports in the record. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A) (change in country conditions as ground to deny asylum); 8 C.F.R. § 1208.16(b)(1)(i)(A) (change in country conditions as ground to deny withholding of removal); *see also Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (finding changed country conditions in Albania sufficient to rebut presumption of future persecution). Shpata's failure to challenge this alternate finding before the BIA—even now he fails to seriously contest it—prevents our review of this unexhausted claim. *See Ramani v. Ashcroft*, 378 F.3d 554, 558-59 (6th Cir. 2004). Thus, we must affirm the IJ's decision because the changed-country-conditions ground alone suffices to deny Shpata asylum and withholding.

Second, Shpata argues that his counsel performed ineffectively. Shpata criticizes counsel for failing to: (1) call other family members as witnesses to corroborate Shpata's testimony; (2) properly authenticate "crucial documents"; and (3) compose a written brief to the BIA on administrative appeal.

We lack jurisdiction to consider Shpata's ineffective-assistance-of-counsel claim because Shpata failed to comply with *Matter of Lozada*. *See Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003) ("Since Sswajje failed to follow [*Lozada*], this Court lacks jurisdiction to determine the merits of this argument."). Under *Lozada*, to raise a claim of ineffective assistance of counsel, an alien must file a motion to reopen with the BIA, and, in support of that motion, must:

> (1) . . . file an affidavit stating his agreement with former counsel with respect to the actions to be taken on appeal and what counsel did

> nor [sic] did not represent to the alien in this regard; (2). . . show that former counsel was informed of the allegations and was given an opportunity to respond; and (3). . . state whether a complaint has been filed with appropriate disciplinary authorities regarding the allegedly ineffective representation.

*Id.* (citing *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988)).  Shpata's failure to meet these requirements forecloses review.

Third, Shpata contends the BIA's practice of affirming without opinion violates due process. This argument lacks merit—we considered and rejected this precise claim in *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003).

III

For the foregoing reasons, we deny the petition for review.