**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0477n.06
Filed: July 7, 2006

**05-3711**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LAL KUMARA CHANDRAGUPTA MATARAGE, | ) ) ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF |
| v. | ) ) | IMMIGRATION APPEALS |
| ALBERTO G. GONZALES, Attorney General, | ) ) ) ) | |
| Respondent. | ) | |

Before: DAUGHTREY and COOK, Circuit Judges, and CARR,[*] District Judge.

**PER CURIAM.** The petitioner, Lal Kumara Chandragupta Matarage, is a citizen of

Sri Lanka who entered this country legally in August 1993. His permission to remain in the

United States eventually expired, but Matarage requested asylum, withholding of removal,

and relief pursuant to the United Nations Convention Against Torture. The immigration

judge who heard the petitioner's case denied the requested relief, and the Board of

Immigration Appeals (BIA) affirmed. Matarage now contends that the adverse decision is

not supported by substantial evidence in the record. He further argues that he is entitled

to a new evidentiary hearing because the immigration judge demonstrated bias against

---

[*]The Hon. James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

him.  Because we find no basis on which to sustain either of these contentions, we deny the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Matarage became a lawyer in Sri Lanka in 1987.  Although he claimed to have no particular political affiliations, the petitioner joined a law firm in his native country that filed habeas corpus applications on behalf of individuals who had disappeared during civil strife between the government and Tamil separatists.  Matarage testified that he had received the "usual sort of" telephone harassment as a result of his legal work, but explained that he did not take the threats "very seriously."  In 1993, however, he allegedly received an anonymous letter threatening his life about the same time that he was attacked on the road while returning from filing habeas corpus applications against the head of an army camp.  During that attack, Matarage said, he was approached by men brandishing automatic weapons and traveling in a van without visible license plates.  According to the petitioner's testimony, the men "stopped my vehicle and they grabbed me out of my car and assaulted me and threatened me. . . . [T]hey asked me to stop filing the cases in the court of appeal, and if I continue, they told me they will do what they have done to [two lawyers who] were murdered by the forces."  The petitioner also said that his attackers then took all of the legal files that he had with him in his vehicle.

Matarage testified that, shaken by the encounter, he contacted a friend in the police department who advised him that his life was in danger and that he should leave the

country as soon as possible. Matarage said that he did leave his home immediately but stayed in Sri Lanka for a while with a lawyer friend of his. Eventually, on August 12, 1993, he entered the United States on a six-month visitor's visa. In June 1994, Matarage changed his immigration status to that of a student and consequently was allowed to extend his stay in this country until December 1995.

On March 21, 1995, Matarage filed an application for asylum and withholding of deportation with the Immigration and Naturalization Service. In May 1995, that request for relief was denied and the petitioner left the country for Canada, beginning a five-year odyssey of going back and forth between the two countries. His request for asylum in Canada was also denied and, according to the petitioner's attorney, "[h]e was returned to the United States from Canada under the Reciprocal Agreement in April of 1999. He then returned to Canada in September 1999 to renew his asylum request. He was again returned to the United States from Canada under the Reciprocal Agreement on September 6, 2000."

On September 4, 2001, an initial removal hearing was held in Detroit, Michigan. The petitioner failed to appear and the immigration judge ordered Matarage removed to Sri Lanka. Due to the ineffective assistance provided by the petitioner's counsel in failing to inform his client of the hearing date, Matarage was ultimately allowed to file a new asylum application on March 7, 2002. An evidentiary hearing was conducted on January 16, 2004, after which the immigration judge once again denied Matarage's requests for relief and

ordered his removal on the grounds that the petitioner had failed to establish past persecution that would raise a rebuttable presumption of a well-founded fear of future persecution. The immigration court then concluded that even if such a presumption had been raised, changed conditions in Sri Lanka indicated that Matarage would not be subject to persecution should he return to his native land. The BIA affirmed that ruling "without opinion," leading to this appeal.

## DISCUSSION

### A. Standard Of Review

When, as in this case, the BIA summarily affirms the decision of an immigration judge without issuing its own opinion, "we review the [immigration judge's] decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). We must sustain a decision by the immigration judge denying relief if that determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). As we have recognized, "[u]nder this deferential standard, we may not reverse the [immigration judge's] determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001); *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). Rather, to overturn an immigration judge's ruling "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original).

## B. Asylum

Pursuant to the provisions of 8 U.S.C. § 1158(b)(1), the attorney general *may* grant asylum to an applicant determined to be "a refugee within the meaning of section 1101(a)(42)(A) of [title 8]." That statutory subsection defines a "refugee" to mean

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Thus, resolution of any request for asylum involves "a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

As explained in 8 C.F.R. § 208.13(b)(1), "[a]n applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim" unless the immigration judge finds, by a preponderance of the evidence, either that:

> (A) There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . on account of political opinion; or

> (B) The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(1)(i).

In making his determination in this matter, the immigration judge assumed the truth of Matarage's claims of harassment but concluded "that the incidents that he has suffered do not rise to the level of past persecution. Hence, he is not entitled to any rebuttal [sic] presumption of future persecution." The immigration judge noted that even if the petitioner had established past persecution, "the bottom line is that because country conditions have changed, . . . [Matarage] cannot demonstrate that there is a pattern or practice in Sri Lanka of persecution of a group of persons similarly situated to him . . . ."

In an effort to establish a well-founded fear of future persecution, the petitioner thus testified at the merits hearing that he personally knew three lawyers who had been murdered for filing habeas corpus applications on behalf of "disappeared" individuals and that he knew of three additional lawyers who were victims of such targeted violence. He also introduced a letter from one of his siblings that recounted how, even after the petitioner left Sri Lanka, unknown individuals came to his former home inquiring about his whereabouts.

Three of the highlighted lawyer murders occurred in 1988 and 1989, however, at least four years before Matarage himself was physically attacked and more than 15 years

prior to the hearing in this matter. Moreover, the letter from the petitioner's brother was dated September 12, 2000, more than three years prior to the hearing. Matarage offered no more recent personal testimony to indicate that such abuses were continuing in Sri Lanka in 2004 or that unidentified marauders were still attempting to find him at his family home. Indeed, the United States Department of State's 2002 Country Report on Human Rights Practices in Sri Lanka (released March 31, 2003) states that "[u]nlike in previous years, there were no credible reports that security forces committed extrajudicial killings," "and no reports of disappearances."

Admittedly, we have recognized "that State Department reports may be problematic sources on which to rely." *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (citing *Koliada*, 259 F.3d at 487); *see also*, *Mece v. Gonzales*, 415 F.3d 562, 574 n.5 (6th Cir. 2005) ("speculation and broad generalizations by the State Department cannot trump concrete, detailed, and adequately corroborated evidence of specific instances of persecution"). Nevertheless, we have also adopted "the view that such reports are generally the best source of information on conditions in foreign nations." *Id.* (citation and internal quotation marks omitted). Moreover, "to reverse the immigration judge's determination on this issue, . . . we must decide that the evidence would *compel* a reasonable factfinder to conclude that there is a reasonable chance of [Matarage] suffering future persecution if he were to return to [Sri Lanka]." *Koliada*, 259 F.3d at 488 (emphasis added). Because the petitioner has offered no concrete evidence of recent, coordinated attacks against habeas corpus lawyers in Sri Lanka, the evidence presented in the record

before this court on appeal does not compel a conclusion contrary to the one reached by

the immigration judge in this case.[1]  Substantial evidence in the record thus supports the

immigration judge's denial of Matarage's petition for asylum.

## C. Withholding Of Removal

Matarage also petitions this court for review of the administrative denial of his

request for withholding of removal.  Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A),

"the Attorney General may not remove an alien to a country if the Attorney General decides

that the alien's life or freedom would be threatened in that country because of the alien's

race, religion, nationality, membership in a particular social group, or political opinion."

Thus, in order to qualify for withholding of removal, the petitioner "must establish that there

is a *clear probability* that he will be subject to persecution if forced to return to [Sri Lanka]."

*Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (emphasis added).  To make such a

showing, a petitioner "must demonstrate that 'it is more likely than not' that he or she will

be persecuted upon return."  *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting

8 C.F.R. § 1208.16(b)(2)).  Because this burden is "a more stringent burden than what is

required on a claim for asylum," *id.* at 640 (quoting *Pilica*, 388 F.3d at 951), it follows from

---

[1]The petitioner does argue that State Department reports and reports from groups like Amnesty International are replete with references to acts of murder and other human rights violations, many of which involve situations that are in no way similar to Matarage's.  *See* Appellant's Br. at 15-17.  Most of those reports, however, detail atrocities dating back to 1990, 1991, and up to 2001.  Unlike the most recent country report from the State Department, therefore, the evidence offered by Matarage fails to provide an insight into the conditions existing in Sri Lanka near the time of the January 2004 immigration hearing.

Matarage's failure to establish his eligibility for asylum that he cannot satisfy the more onerous burden for withholding of removal either. *See, e.g. Koliada*, 259 F.3d at 489.

## D. Relief Under The United Nations Convention Against Torture

The petitioner additionally requested relief under the provisions of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. To obtain withholding of removal under that convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). This burden is also significantly greater than the burden required to demonstrate eligibility for asylum. Whereas asylum may be granted by the attorney general upon a showing of a "well-founded fear of persecution," withholding of removal under the Convention Against Torture requires a showing that it is more likely than not that Matarage not only would be persecuted upon his return to Sri Lanka, but that he would be *tortured*. Because the petitioner cannot demonstrate entitlement to a grant of asylum in this case, he also cannot meet the more stringent requirements under the Convention Against Torture. *See, e.g.*, *Liti*, 411 F.3d at 641. Substantial evidence thus supports the immigration judge's denial of this extraordinary relief to Matarage.

*05-3711*
*Matarage v. Gonzales*

**E.  Due Process Claim**

In a final allegation of error, the petitioner asserts that the immigration judge did not fairly and impartially preside over his claims for relief. The claim of bias is premised upon statements that the immigration judge made at the beginning of the January 2004 hearing. In inquiring whether the petitioner might be willing to withdraw his request for a hearing and instead agree to voluntary departure from this country, the immigration judge noted:

> It also appears to me that [Matarage] had a similar application denied by the government. He probably had a similar application denied by the Canadian government, and as I read the latest Country Condition Reports, even if one would assume his story was true, things have changed in Sri Lanka vis-a-vis people such as he claims to be.

We review *de novo* any allegations of due process violations during removal hearings. *See Mikhailevitch*, 146 F.3d at 391. Such a review, moreover, entails a two-pronged inquiry: "first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005).

Despite the petitioner's arguments to the contrary, the comments made by the immigration judge did not indicate bias against Matarage on the part of the presiding official. Rather, the comments were more likely an attempt by the immigration judge to apprise the petitioner of the strength of the case to be presented against him and to extend a final benefit offer. Even if the judge's comments were to be construed as violative of due process, however, Matarage cannot establish prejudice from those statements given the uncontradicted change in country conditions that nullified any effort on the petitioner's part

to establish even a well-founded fear of future persecution in Sri Lanka. This issue is thus without merit.

## CONCLUSION

Because the evidence in this matter does not compel a conclusion contrary to that reached by the immigration judge, we conclude that substantial evidence supports the determination that conditions in Sri Lanka have changed to the extent that the petitioner cannot establish a well-founded fear of persecution upon his return to that country. Consequently, we must DENY Matarage's petition for review and AFFIRM the immigration judge's order of removal.