BOGGS, Circuit Judge,
dissenting.
I disagree with my colleagues that the record in this case compels us to conclude that substantial evidence did not support the determination of the IJ and BIA that the government had rebutted the legal presumption that Aldus had a well-founded fear of persecution. In my opinion, the record demonstrates that, while Haiti may have been a maelstrom of chaos, violence, and corruption, it was no more so with respect to the petitioner than it was with respect to the general populace.
The majority cites to a 2005 State Department report for the proposition that “ ‘retribution killings and politically motivated violence continued throughout the country,’ including arbitrary killings and disappearances carried out by the Haitian National Police and arbitrary killings by ‘members of the disbanded armed forces ... who helped force President Aristide’s resignation.’ ” Maj. Op. at 588 (emphases added). It was not reversible error for the IJ and BIA to take the report at its word when it characterized these acts as “arbitrary,” a term that implies that they were done without regard for the victims’ political ideology, and indeed there is very little indication in the report that this violence— politically motivated, as it may have been— was directed at victims chosen for their politics.[1] See INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (rejecting a claim of well-founded fear of future persecution that was based on a politically-neutral applicant’s refusal to fight with guerilla forces in Guatemala). The report further specifically indicates that much of the widespread violence in Haiti had changed from a tool of political intimidation to a “broader type of criminality committed by gangs with no specific political characteristic.”[2]
A petitioner “cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but must instead offer reasonably specific information showing a real threat of individual persecution.” Mapouya v. Gonzales, 487 F.3d 396, 412 (6th Cir.2007). We have consistently held that widespread indiscriminate violence does not constitute the kind of individualized targeting required for a grant of refugee status. See, e.g., Lumaj v. Gonzales, 462 F.3d 574, 578 (6th Cir.2006) (rejecting a claim of well-founded fear of future persecution because although a widespread threat of violence existed in Albania, there was no evidence that individuals were tar *592 geted on political grounds). The documentary evidence contained in the State Department report contains only one example of Aristide supporters being persecuted because they were Aristide supporters: the police sweeps of pro-Aristide neighborhoods in Port-au-Prince mentioned by the majority, which came about in response to a weeks-long campaign of violence conducted by Aristide partisans in that same city. Given that we uphold the decision below if it is supported by the record considered as a whole, Elias-Zacarias, 502 U.S. at 481, 112 S.Ct. 812 this single example does not suffice to compel the conclusion that Jean Alcius, who had neither been involved in Haitian politics nor even physically present in Haiti for any significant length of time since 1995, would be singled out for persecution upon his return.[3]
As the record indicates, the pro-Aristide Fanmi Lavalas party participated in the February 2006 elections in Haiti, insofar as it formed an alliance with another party and registered a candidate for president; in fact, the victor in that election was former Lavalas member Rene Preval, who ran as the candidate of another coalition group. From this evidence, and from the fact that no other crackdowns occurred despite a significant pro-Aristide population during the relevant period of time, the BIA/IJ could certainly have rationally concluded that the single crackdown in Port-au-Prince was a response more to the violence perpetrated in those neighborhoods than the politics of the perpetrators.
Moreover, the majority fails to address a crucial rationale set forth in by the IJ. The majority faults the IJ for not “grappling with” the evidence that Alcius claims supports his argument that he has a well-founded fear of future persecution, and states that “the IJ and the BIA were required, at a minimum, to address substantively the evidence in the record that Aristide and Lavalas supporters were still being persecuted.” Maj. Op. at 589. In addition to the fact that such evidence seems to have been in short supply, the majority itself has a similar failing. In dismissing the IJ’s analysis as a shallow attempt to label Haiti’s internal conflict as a “battle between terrorists,” the majority ignores the core of the IJ’s rationale: that any extra-governmental sectarian violence between Lavalas forces and their rivals was irrelevant (to the extent Lavalas forces might have been persecuted at all), because Alcius himself was in no individualized danger because his association with the Fanmi Lavalas was minor and had ended twelve years prior. The IJ’s characterization of the violence between the Fanmi Lavalas and FRAPH elements as being “between terrorists” was merely a predicate to his observation that Alcius did not fear persecution from the government, but rather allegedly feared the government could not protect him from anti-Aristide forces; ultimately, the IJ’s argument was that there was no reason to expect that those forces would target him in the first place. Hence I see no point in requiring the IJ to grapple with nebulous, conclusory statements about the existence of persecution that, at most, demonstrated the existence of an irrelevance.
*593 The evidence produced by Aldus failed to establish either that pro-Aristide partisans were being systematically targeted or that he himself would be identified as affiliated with those partisans. Either of these deficiencies would be enough, in my opinion, to demonstrate that he lacked a well-founded fear of future persecution.
For all that I believe the majority to be in error with respect to its treatment of Aldus's claims of a well-founded fear of future persecution, I nevertheless recognize that reasonable jurists may disagree as to when they may be “compelled to conclude” something. However, the majority’s treatment of the argument raised by Aldus with respect to the evidence submitted by him but lost after his first IJ hearing is unavailing.
It is certainly true that the loss of evidence submitted by Aldus is, as the majority puts it, “disconcerting.” But it is absolutely not true that Aldus lacked a meaningful opportunity to re-introduce that evidence, or that the Immigration Judge was in any way unclear in communicating the fact that the evidence had been lost.
The transcript of the proceedings of March 13, 2006, that occurred on remand to the IJ following the BIA’s determination that Aldus's file had been lost, contains the following exchange:
[JUDGE TO COUNSEL]. But apparently the Board has misplaced the entire file. The Government is going to give the copy of the charging document and the copy of the 1-589 itself with attached affidavits, but not all the evidence.
[...]
Counsel, you need to re-file new evidence to go with the 1-589. Also if the 1-589 needs to be amended at this point, you need to do so. Just, you know, don’t file a new 1-589, just file something that indicates the amendments to it.
A. Okay.
Q. And but you do need to re-file all supporting documentation, all evidence — I sure hope that one of the original documents in there [sic]. I have no idea what was in the file when it went to the Board.
A. I rarely file those, if I don’t have to, so—
[DEPARTMENT OF HOMELAND SECURITY ATTORNEY]. There are newspaper, there is a newspaper article, at least one original in the, in the—
Q. Well, the original are [sic] lost and gone forever, so hopefully people have copies. In any event, we’re going to do a whole new hearing on August 28, 2006 at 2 o’clock.
[...]
And you need to re-file, or file for the first time, any evidence supporting the application.
A. Okay.
Q. Did you have any witnesses testify last time?
A. No, I didn’t.
Q. All right. Well, you can — this is a new hearing, so you can do whatever you want this time.
A. All right.
“You need to file new evidence to go with the 1-589.” “You do need to re-file all supporting documentation, all evidence.” “The originaos] are lost and gone forever.” “You need to re-file ... any evidence supporting the application.” “This is a new hearing, so you can do whatever you want this time.” I struggle in vain to comprehend how the IJ could possibly have been any clearer, nor does the majority have any suggestions as to a procedure that would have passed muster with them.
*594 The simple fact is that, when the evidence submitted by Aldus was lost, the BIA and the IJ did exactly what it was supposed to do: told him of the problem and gave him an entirely new chance to present his case. The problem here was not with the BIA or the I J’s approach, but with Alcius’s attorneys, who did not take adequate steps to ensure that the missing evidence was re-introduced.[4] In my view, remanding on Alcius’s due process argument is merely a way of cleaning up counsel’s mistake, and it is quite incredible to me that the majority would brand the IJ’s behavior in this respect' — along with the fact that he introduced evidence that he himself later excluded as improper — as evidence of his lack of impartiality.
I respectfully dissent.

. The report's passing reference to "retribution killings” does not explain who was targeted for retribution, or why.

. The “other documentary evidence” referenced by the majority, including reports from Human Rights Watch and Globalsecurity.org, is similarly vague as to the nature and extent of unri-Fanmi Lavalas violence, though it contains quite a bit of documentary evidence of violence by pro-Lavalas forces. In any event, we have held that State Department reports may generally be taken by an IJ as the best evidence available to ascertain country conditions in the context of asylum hearings. Mullai v. Ashcroft, 385 F.3d 635, 639 (6th Cir.2004).

. As evidence that Lavalas supporters were at risk of persecution, the majority makes the creative argument that "the reports of pro-Aristide violence tend to support a conclusion that Alcius's fear is well-founded since such violence would tend to provoke violent responses against Aristide supporters, a phenomenon which the documentary evidence bears out." Maj. Op. at 589. Hence they would read evidence of murder and mayhem committed by a political organization as evidence of persecution of that group. This logic is the embodiment of the "speculative conclusions or mere assertions of fear” prohibited by Mapouya.

. Aldus changed attorneys some four months after the hearing of March 13, 2006; apparently his first counsel retired from the practice of law. His new counsel was employed by the same legal clinic and presumably had access to the hearing transcript and any other relevant materials.