NOT FOR PUBLICATION
File Name: 05a0447n.06
Filed: May 27, 2005

NO. 02-4349

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TONIN PALAJ; ALBINA PALAJ;
ZHAN PALAJ; ANJEZE PALAJ,

           **Petitioners,**

v.

IMMIGRATION AND NATURALIZATION
SERVICE,

           **Respondent.**

_____/

**ON APPEAL FROM THE
IMMIGRATION AND
NATURALIZATION SERVICE**

BEFORE: SUHRHEINRICH, and GILMAN, Circuit Judges; and ACKERMAN, District Judge.[*]

       **SUHRHEINRICH, J.** Petitioners, the Palaj family, appeal from the decision of the Board of Immigration Appeals ("BIA") denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture. For the reasons that follow, we **AFFIRM.**

**I.**

       Petitioners, a husband and wife and their two children, are citizens of Albania. Lead petitioner is a forty-year-old male who was admitted to the United States at Newark, New Jersey, as a visitor for pleasure on or about March 29, 2000. The Immigration and Naturalization Service ("INS") commenced removal proceedings against him, pursuant to § 237(a)(1)(B) of the

_____

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

Immigration and Nationality Act ("INA") because he remained longer than his visa permitted. Lead petitioner's thirty-five-year-old wife was admitted to the United States at Detroit, Michigan, as a visitor for pleasure on April 25, 2000. She also remained longer than her visa permitted, and the INS commenced removal proceedings. The remaining two petitioners are minor children – an eleven-year-old son who was admitted to the United States on or about January 3, 2001, and a seven-year old daughter who was admitted to the United States on or about April 20, 2000. These children did not have the proper entry documents and, thus, were placed in removal proceedings pursuant to § 212(a)(7)(i)(I) of the INA. Lead petitioner asserts that both his and his spouse's family have long been persecuted by the Communist regime, and that the Socialist Party currently in power in Albania is still connected to the former Communist Party.

On December 8, 2000, lead petitioner submitted an application to the INS, naming all four petitioners and seeking asylum, withholding of removal, and relief under the Convention Against Torture. Petitioners appeared *pro se* at their merits hearing on August 23, 2001. The Immigration Judge ("IJ") did not find petitioners credible, denied their application for asylum and withholding of removal, and ordered that they be removed to Albania. On February 4, 2002, with the aid of an attorney, petitioners appealed the IJ's decision to the BIA. On November 4, 2002, the BIA affirmed, without opinion, the decision of the IJ. On November 27, 2002, petitioners appealed the BIA's decision to this Court. On August 26, 2003, the BIA denied petitioners' motion requesting that their case be reopened and remanded to the IJ for further proceedings. This Court denied petitioners' motion to amend the record to include their motion to reopen and remand.

**II.**

2

This Court must uphold the BIA's denial of asylum if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). Substantial evidence is a "deferential standard which 'plainly does not entitle a reviewing court to reverse simply . . . because it is convinced that it would have decided the case differently.'" *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992) (citing *DiCicco v. INS*, 873 F.2d 910, 912 (6th Cir. 1989) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-75 (1985))). In order to reverse the BIA's factual determination, this Court must find that "the evidence not only supports a contrary conclusion, but indeed *compels* it. *Klawitter* at 152 (citing *Elias-Zacarias*, 502 U.S. at 481 n.1 (1992)).

This Court reviews *de novo* an alleged due process violation that is based upon the manner in which an IJ conducts a deportation hearing. *Ivezaj v. INS*, 84 F.3d 215, 220 (6th Cir. 1996), *superceded by statute on other grounds as stated in Ramani v. Aschcroft*, 378 F.3d 554, 560 (6th Cir. 2004).

**III.**

Petitioners argue on appeal that they did not effectively waive their right to counsel, that their due process rights were denied because the IJ was biased and assumed the role of prosecutor, that the BIA's summary affirmance violated their right to a fair review, and that they met their burden of proof of persecution.

**A.**

Although petitioners argued in their brief that the IJ did not ensure that they intelligently and voluntarily waived their right to counsel, petitioners' attorney conceded this point during oral arguments before this Court on April 19, 2005.

3

**B.**

Petitioners also argue that their due process rights were violated because the IJ was biased and assumed a prosecutorial role. While due process requires that an alien be afforded a full and fair hearing, "[t]he IJ is afforded broad discretion 'to control the manner of interrogation in order to ascertain the truth,'" *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (quoting *Iliev v. INS*, 127 F.3d 638, 643 (7th Cir. 1997)), and mere intimidation does not render a hearing unfair. *See Ivezaj*, 84 F.3d at 220 (stating that even if there were evidence in the record that the IJ was overly abrupt or intimidating, "[petitioners] have no right not to have their feelings hurt by a 'no nonsense' IJ"); *see also Mikhailevitch*, 146 F.3d at 391-92 (stating that the IJ's questions that attempted to clarify certain time frames and refocus the direction of applicant's testimony, even if "brusque," did not deny applicant his due process rights).

Here, since petitioners had no counsel, they agreed to allow the IJ to ask questions at the hearing. The judge was entitled to question petitioners. *See Bicja v. INS*, No. 03-3049, 2005 WL 54727, at *3 (6th Cir. Jan. 6, 2005) (unpublished) (holding that, despite the applicants' complaints that the IJ improperly took on the role of prosecutor in cross-examining, the IJ was entitled to question the witness and his manner of questioning did not rise to the level of a due process violation). Further, the record demonstrates that the IJ questioned petitioners in a manner geared toward discovering the truth. For example, given lead petitioner's claim that his wife had been raped, it was reasonable for the IJ to question the wife about whether penetration occurred. Moreover, the IJ acknowledged the sensitivity of the issue and explained why he had to pursue such a delicate line of questioning. While petitioners' counsel insists that, for cultural reasons, the IJ should not have questioned the wife about the "rape" while her husband was present, lead petitioner

4

is a party and, therefore, has the right to be present at every stage of the proceedings. Additionally, although petitioners complain about the IJ's "interruptions and impatient manner," the IJ's pointed questions do not rise to the level of a due process violation. In short, the IJ's behavior did not prevent petitioners from having a full and fair hearing.

## C.

Petitioners next argue that the BIA's summary affirmance of the IJ's denial of petitioners' application denied them the opportunity for meaningful judicial review.

Our Court has repeatedly upheld the BIA's streamlined procedure against both administrative law and due process challenges, even when the BIA affirms without opinion. *See Denko v. INS*, 351 F.3d 717, 725, 727-30 & n.10 (6th Cir. 2003). Moreover, because this Court reviews the IJ's decision directly, "our ability to conduct a full and fair appraisal of [petitioners'] case is not compromised." *Id.* at 732 (citations and internal quotation marks omitted).

There is no evidence to indicate that the issues in this case were sufficiently novel or significant to warrant a three-member reviewing panel or a written opinion from the BIA. Petitioners also offer no evidence that the BIA otherwise failed to properly review their case. Moreover, this Court has directly reviewed the IJ's detailed, thirty-four-page decision. In short, petitioners were not prejudiced by the BIA's summary affirmance.

## D.

Finally, petitioners contend they met their burden of proof of persecution. Specifically, they argue that the IJ's denial of asylum was not supported by substantial evidence and that the IJ failed to fully consider the U.S. Department of State Country Condition Reports submitted into evidence.

5

The disposition of an asylum application requires a two-step inquiry, with the alien bearing the burden of proof at both stages. *Klawitter*, 970 F.2d at 151. First, she must prove statutory eligibility by "establishing a well-founded fear of persecution," *id.*, which "requires 'a showing by credible, direct, and specific evidence ... of facts that would support a *reasonable* fear that the petitioner faces persecution.'" *Id.* at 153 (quoting *Rodriquez-Rivera v. INS,* 848 F.2d 998, 1002 (9th Cir. 1988)). Second, she must show that the IJ should exercise discretion to grant asylum. *Id.*

The IJ denied petitioners' claim on the grounds that they were not credible because their testimony often conflicted with their asylum application. The record does not compel us to reach a different conclusion. Petitioners' application states that lead petitioner owned a "small shop for retailing clothes." Yet, lead petitioner testified that he sold only groceries. The application relates a particular arrest that occurred "on the street." Yet, lead petitioner testified that the same arrest occurred inside a local café while he was drinking coffee. Although petitioners' application states that lead petitioner's wife was "raped," she testified that the offending officer "did not do anything . . . [because] she started shouting and then [the officer] left." Petitioners' application also contains glaring omissions, most notably the failure to include an incident to which lead petitioner testified, whereby he was threatened at gunpoint while serving as an election observer. In short, the sheer number of inconsistencies and the significance of the omissions supports the IJ's credibility assessment.

An applicant whose testimony is not credible can still prove eligibility for asylum through corroborating evidence. *See In re Y-B-*, 21 I. & N. Dec. 1136 (BIA 1998). However, some of petitioners' corroborating evidence undercut, rather than supported, their claims of persecution under the current Socialist regime. For example, a document supposedly verifying that lead

6

petitioner belonged to an organization called the Formerly Politically Persecuted Persons in Albania and that petitioners suffered during the Communist regime also stated: "These difficult situations for the family continued until the beginning of Democracy in Albania in 1991."

As to petitioners' claim that the IJ did not fully consider the country conditions, the record demonstrates that the IJ considered and reconciled the information contained within the submitted reports. For example, while the 1999-2000 U.S. Department of State Country Condition Report for Albania indicates that Democratic Party members claims that its members are harassed, beaten and killed by government agents, the same report also states that there have been no confirmed cases of political killings by the government. Even more compelling, the May 2001 profile of asylum claims and country conditions for Albania states that

> [w]ith the Socialist Party currently leading a coalition government, it is highly unlikely in today's circumstances that many applicants will have credible claims to political persecution. Such claims are generally amplified by the assertion that a reconstituted communist regime has come to power. Claims relying on this premise are contradicted by virtually all state actions[.]

The country conditions, especially when coupled with the IJ's adverse credibility assessment, support the IJ's denial of asylum.

In sum, the evidence in this case does not compel us to conclude that petitioners were persecuted in the past or that they have a well-founded fear of persecution in the future. Therefore, they have neither established eligibility for asylum nor met the more rigorous standards required for withholding of removal or relief from the Convention Against Torture. *See Koliada v. INS*, 259 F.3d 482, 488-89 (6th Cir. 2001) (per curiam) ("An application seeking withholding of deportation faces a more stringent burden of proof than one for asylum.") (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987)); *see also* 8 C.F.R. § 208.18(a) (defining the term "torture") § 208.16(c)(2)

7

(stating that an applicant attempting to establish eligibility under the Convention Against Torture must demonstrate that it is more likely than not that he will be tortured if returned to his country of origin). Accordingly, reasonable, substantial, and probative evidence supports the IJ's decision.

**IV.**

For the foregoing reasons, this Court **AFFIRMS** the decision of the BIA.