NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0337n.06
Filed: May 11, 2006

**No. 05-3204**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALEKS GJELAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM A |
| | ) | FINAL ORDER OF THE BOARD OF |
| ALBERTO R. GONZALES, Attorney | ) | IMMIGRATION APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: KEITH, MERRITT, and DAUGHTREY, Circuit Judges.

**PER CURIAM.** The petitioner, Aleks Gjelaj, is a citizen of Albania who seeks review of a decision of the Board of Immigration Appeals (BIA) that summarily affirmed an immigration judge's denial of the petitioner's claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. Specifically, Gjelaj contends that the immigration judge improperly held both that he was not credible in regard to his claims of past persecution and that he had filed a frivolous application for relief in this matter. We conclude that there is substantial evidence to support these findings, and we therefore deny review.

The petitioner was born in December 1975 in Albania and lived the first 15 years of his life under what the United States Department of State refers to as "an exceptionally repressive and idiosyncratic communist regime." Gjelaj testified that he joined the Albanian Democratic Party in March 1994 and began actively working for open government in the country and against perceived attempts by officials to revert to the totalitarian practices rampant in Albania from the end of World War II until the fall of the communist regime in 1990. During the next several years, he became increasingly active, serving in various offices in the local party. According to Gjelaj, he also participated in various demonstrations, he organized rallies, and he gave speeches and radio interviews between 1997 and 2000. As a result of some of these activities, Gjelaj claimed, the police repeatedly harassed him and arrested and beat him during the period when the Socialist Party was in power in Albania.

Gjelaj later testified to certain specific instances of persecution, most of them at the hands of otherwise unidentified "socialist terrorist groups." For example, the petitioner testified that he was drinking coffee at a local café with two cousins and two other Democratic Party members on November 9, 1999, when a masked man appeared and started spraying their table with gunfire, killing Gjelaj's four companions. While other gunmen stood guard outside the café, the individual who fired the fatal shots exclaimed, "[F]rom now on you can no more speak and do things for the party or anything at all."

Gjelaj also testified that on March 23, 2000, the day after he joined in a celebration in Tirana commemorating the anniversary of the Democratic Party's rise to power, he made a speech in his hometown, walked to his car, and watched as it burst into flames when he was only "about seven meters" from the vehicle. Gjelaj said that he did not report this incident to the police because he felt that the police were responsible for the bombing.

Instead, he testified, as the result of those two violent attempts to dissuade him from continuing his political activities, he decided to leave Albania. On May 12, 2000, he traveled by boat to Italy, and then flew to the United States on May 13, 2000. He arrived in Newark, New Jersey, with authorization for a six-month stay in this country. When he remained in the United States beyond the allotted time period, however, he was detained and removal proceedings were instituted.

At an evidentiary hearing held on May 20, 2003, Gjelaj testified to the extent of his political activities in his homeland and the repercussions he suffered as a result. He also introduced three pieces of documentary evidence to support his claims of political persecution. Included in those documents were a hospital report detailing treatment for a leg injury suffered during a beating in retaliation for a 1998 radio interview he gave that was critical of the then-ruling Socialist Party, his Democratic Party membership card, and a letter purportedly signed by two party officials detailing the retaliation Gjelaj suffered for his political activities. Through both his oral testimony and the documentary evidence, the

petitioner attempted to convey that he would be imprisoned or killed on account of his political activity if he were to return to Albania.

The immigration judge, however, expressed concerns about the authenticity of the various pieces of documentary evidence and about the truthfulness of Gjelaj's testimony in general. Indeed, all three documents had been submitted for investigation through the American consular office in Tirana, and the investigator reported that although the Democratic Party membership was considered valid, the hospital record and the report of the petitioner's activities were not genuine. The immigration judge had already warned Gjelaj orally and in writing that the introduction of false documents or testimony could lead to a finding that his application was frivolous, in turn leading to an order permanently barring him from re-entry into the United States. Out of an abundance of caution, he also afforded the petitioner an opportunity to obtain verification of the documents after Gjelaj's attorney objected to the report of the Albanian investigator finding two of the them invalid.

After a six-month recess in the proceedings, the petitioner's counsel reported that she had been unable to locate one of the two appropriate Democratic Party officials in Albania to verify the authenticity of the party document, and she offered no explanation as to the second official who had purportedly signed the document. It is also clear that she had done "nothing" "with respect to the hospital record." Consequently, the immigration judge concluded that "[Gjelaj] has filed some frivolous documents. He's testified falsely and this was all-knowing and accordingly the Court finds that his application is frivolous."

The immigration judge also denied the petitioner's claims for asylum, withholding of removal, and relief under the Convention Against Torture. Finding Gjelaj not to be credible, the immigration judge first stated that the petitioner "has not demonstrated what he claimed happened to him happened to him in Albania and accordingly he has not demonstrated past persecution." In any event, the immigration judge concluded, "there is not [a] pattern or practice of persecution of democratic party membership people and accordingly he has not demonstrated that he has a well-founded fear of future persecution either objectively or subjectively." Because a grant of withholding of removal or a grant of relief under the Convention Against Torture requires the petitioner to satisfy an even more stringent burden than a movant seeking only asylum, the immigration judge also found those avenues of relief to be closed to Gjelaj. The BIA then affirmed the immigration judge's rulings "without opinion." The petitioner now seeks review in this court of the immigration judge's determinations.

When, as in this case, the BIA summarily affirms the decision of an immigration judge without issuing its own opinion, "we review the [immigration judge's] decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). We must sustain a decision by the immigration judge denying relief if that determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). As we have recognized, "[u]nder this deferential standard, we may not reverse the [immigration judge's] determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486

(6th Cir. 2001); *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). Rather, to overturn an immigration judge's ruling "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original).

Pursuant to the provisions of 8 U.S.C. § 1158(b)(1), the attorney general *may* grant asylum to an applicant determined to be "a refugee within the meaning of section 1101(a)(42)(A) of [title 8]." That statutory subsection defines a "refugee" to mean

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Thus, resolution of any request for asylum involves "a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

As explained in 8 C.F.R. § 208.13(b)(1), "[a]n applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim" unless the immigration judge finds, by a preponderance of the evidence, either that:

(A)  There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . on account of political opinion; or

(B)  The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(1)(i).

The obvious intent of much of the petitioner's testimony in this case was to establish that Gjelaj suffered past persecution in Albania because of his political beliefs, thus raising a rebuttable presumption that he also has a "well-founded fear of persecution" should he return to his native country.  The decision by the immigration judge to deny the petitioner's request for asylum was, however, driven by his conclusion that Gjelaj was not a credible witness and, therefore, that the petitioner's claims of past persecution could not be believed.  We consider such a credibility determination to be a finding of fact reviewed under the deferential substantial evidence standard.  *See Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004).  Even so, the immigration judge's conclusion must still be supported by specific reasons and must be based upon issues "that go to the heart of the applicant's claim."  *Id.* at 926.  In other words, "[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility."  *Id.* (citations and internal quotation marks omitted).

In this case, the immigration judge noted several inconsistencies in the petitioner's testimony and in the documentation supporting that testimony.  For instance, the

immigration judge emphasized that Gjelaj's in-court account of the tragedy at the café in November 1999 differed from the description of the event that was included in the petitioner's two applications for asylum. In particular, the applications mentioned that Gjelaj's four companions were all cousins of his, that multiple gunmen entered the café, and that one of his companion's last name was "Progri." Yet, at the evidentiary hearing, the petitioner insisted that only two of the men accompanying him to the café on that fateful day were relatives, that only one masked gunman opened fire on the crowd (while others stood guard outside), and that his companion's surname was actually "Progni."

The immigration judge's confidence in the petitioner's credibility was also undermined by what he considered to be the fraudulent nature of the documents that were submitted by Gjelaj. An official at the hospital from which the record of the petitioner's four-day stay supposedly originated could find no evidence that Gjelaj had ever been a patient in that facility. There were similar problems with the account of Gjelaj's political activities that purportedly came from Albanian Democratic Party headquarters. At the hearing, Gjelaj conceded that he had prepared the report himself and faxed it to Albania for the appropriate signatures of the party chairman and secretary. As to that document, the investigation report stated:

> The certificate allegedly issued on October 20, 2000, by the Democratic Party for Shkodra branch concerning Mr. Aleks Gjelaj is not valid. On July 19, 2001, the consular investigator went to Shkodra and met with Mr. Ludovik Dega, secretary of the Democratic Party for Shkodra branch. The investigator showed Mrs. [sic] Dega the copy of the certificate submitted by the alien and asked if it was genuine. Mr. Dega stated that the office of

> Democratic Party for Shkodra branch had not issue [sic] the certificate to Mr. Gjelaj because the signatures on the certificate are not genuine. Furthermore, Mr. Dega stated that the office of that party did not agree with and could not support the content of Mr. Gjelaj's certificate.

Finally, the immigration judge based his finding that Gjelaj was not a credible witness in part upon the fact that the petitioner's own siblings who resided in the United States did not testify on his behalf. Although Gjelaj's brother lived in New York State, the immigration judge noted the absence of an affidavit or other statement in support of the petitioner's request for asylum. A sister who resided near Detroit but had lived with Gjelaj in Albania during the late 1990's was also not present at the hearing, nor had she submitted a written statement of any kind on his behalf.

The immigration judge further determined that regardless of whether Gjelaj had endured past persecution in Albania, he was not eligible for asylum in this country because changed conditions in his homeland rebutted any presumption that he would be subject to future persecution upon removal or that he could have a well-founded fear of such future persecution. In reaching that conclusion, the immigration judge relied in part upon the State Department's 2001 country profile of Albania, which states:

> There is virtually no evidence that individuals are targeted for mistreatment on political grounds. Far more prevalent is organized and amateur crime, exacerbated by the widespread availability of firearms, high unemployment and poverty, continued corruption among the police and a culture of blood feud that is wholly independent of political activity.

* * * * *

> All political parties have been active in most of the country without a pattern of mistreatment, even during the dark days of 1997. There is no post-Communist tradition of retribution against political leaders and few instances thereof. Indeed the two major parties have always had multiple, unhindered television and print media outlets to present their generally biased positions. Albanians have more basis for concern over crime and unpredictable armed bands and the widespread distribution of weapons purloined from the authorities.

Admittedly, we have recognized "that State Department reports may be problematic sources on which to rely." *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (citing *Koliada*, 259 F.3d at 487); *see also Mece v. Gonzales*, 415 F.3d 562, 574 n.5 (6th Cir. 2005) ("speculation and broad generalizations by the State Department cannot trump concrete, detailed, and adequately corroborated evidence of specific instances of persecution"). Nevertheless, we have also adopted "the view that such reports are generally the best source of information on conditions in foreign nations." *Id.* (citation and internal quotation marks omitted). Moreover, "to reverse the immigration judge's determination on this issue, . . . we must decide that the evidence would *compel* a reasonable factfinder to conclude that there is a reasonable chance of [Gjelaj] suffering future persecution if he were to return to [Albania]." *Koliada*, 259 F.3d at 488 (emphasis added). The evidence presented in the record before this court on appeal does not compel such a conclusion. Substantial evidence in the record thus supports the immigration judge's denial of Gjelaj's petition for asylum.

Gjelaj also petitions this court for review of the administrative denial of his request for withholding of removal. Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the

Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Thus, in order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to [Albania]." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). To make such a showing, a petitioner "must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). Because this burden is "a more stringent burden than what is required on a claim for asylum," *id.* at 640 (quoting *Pilica*, 388 F.3d at 951), it follows from Gjelaj's failure to establish his eligibility for asylum that he cannot satisfy the more onerous burden for withholding of removal either. *See*, *e.g.*, *Koliada*, 259 F.3d at 489.

The petitioner additionally requested relief under the provisions of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. To obtain withholding of removal under that convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). This burden is also significantly greater than the burden required to demonstrate eligibility for asylum. Whereas asylum may be granted by the attorney general upon a showing of a "well-founded fear of persecution," withholding of removal under the Convention Against Torture requires a showing that it is *more likely than not* that Gjelaj not only would be

persecuted upon his return to Albania, but that he would be *tortured*. Because the petitioner cannot demonstrate entitlement to a grant of asylum in this case, he also cannot meet the more stringent requirements under the Convention Against Torture. *See, e.g.*, *Liti*, 411 F.3d at 641. Substantial evidence thus supports the immigration judge's denial of this extraordinary relief to Gjelaj.

Under the provisions of the Immigration and Nationality Act, an alien becomes "permanently ineligible for any benefits under" the Act if the immigration judge determines that the petitioner has filed a frivolous application. 8 U.S.C. § 1158(d)(6). "'[A]n asylum application is frivolous if any of its material elements is deliberately fabricated.' 8 C.F.R. § 1208.20. The regulations require, however, that the applicant 'has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.' *Id.*" *Selami v. Gonzales*, 423 F.3d 621, 626 (6th Cir. 2005).

There can be little doubt in this case that the petitioner was given ample opportunity to produce an explanation for the highlighted deficiencies in the petitioner's documentary evidence. No adequate explanation was forthcoming. Hence, even though the record before us does not prove unequivocally that material elements of Gjelaj's application were deliberately fabricated, neither does that record *compel* a conclusion contrary to that reached by the immigration judge. We must conclude, therefore, that there is substantial evidence to support the determination that the petitioner's application was frivolous.

For these reasons, we DENY the petition for review and sustain the decision of the immigration judge.