NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0540n.06
Filed: August 1, 2006

No. 05-3862

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MUHAMET CACANI, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ALBERTO R. GONZALES, Attorney General, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Before: GILMAN, SUTTON and COOK, Circuit Judges.

COOK, Circuit Judge.  Petitioner Muhamet Cacani petitions this court for review of the Board of Immigration Appeals's order denying his application for asylum and withholding of removal under the Immigration and Nationality Act (the "Act") and for withholding relief under the Convention Against Torture.  Because the evidence in the record does not compel us to conclude to the contrary, we deny the petition for review.

I.

After fleeing Albania with his family in 1999, Cacani illegally entered the United States. At the removal hearing, Cacani, as lead petitioner, described the following events to support his claim that he was persecuted on account of his political opinion.

No. 05-3862
*Cacani v. Gonzales*

From 1960 to 1965 and from 1971 to 1991, the Albanian Communist regime detained Cacani and his family in labor camps because they "were seen as opposing the Communist government" and because two relatives had escaped to the United States. After his release, Cacani joined the Democratic Party (DP) and "gave speeches and went from village to village in [Albania] spreading the concept of democracy through [his] speeches." He testified that he "[spoke] out how the Socialist or Communist Party is and how the [DP] was freedom of rights on the brink."

Cacani testified he was threatened on four occasions because of his DP activities. First, in October 1997, a police chief and three masked police officers entered the restaurant Cacani owned, pointed their guns at the occupants, and ordered them to lie down on the floor. The police chief then "grabbed [Cacani] from behind, pull[ed] his gun," and told Cacani that he was going to kill him for "talking against the police" and the Socialist Party. Second, in late 1997, masked officers again entered Cacani's restaurant and beat him until he lost consciousness. Cacani says his knee was injured as a result. Third, in 1998 or 1999, a person named "Lolly" entered Cacani's restaurant, asked him why he was "talking bad" about the Socialist Party and threatened to kill him if he continued to do so. Fourth, on May 15, 1998, as Cacani and his wife were driving to their village, a shepherd warned Cacani not to go to the village because two armed people were looking for him. Cacani proceeded on and shots soon rang out from bushes along the side of the road. Additionally, Cacani testified that he was interrogated 15 times at the local police station and prosecutor's office, where his interrogators asked him why he was "speaking against the government [and] the party," threatened him, and beat him.

The IJ denied Cacani's claims for relief, finding his testimony regarding the alleged past persecution not credible. The IJ also found that country conditions in Albania had changed since Cacani's alleged persecution.

## II.

Because the BIA adopted the IJ's decision without issuing a separate opinion, we review the IJ's decision directly. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). We will not disturb the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quotation omitted). Under this standard, the IJ's findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Singh*, 398 F.3d at 400 (quotation omitted); 8 U.S.C. § 1252(b)(4)(B).

## III.

### A. Asylum

The Act authorizes the Attorney General, in his discretion, to grant asylum to an alien who is a "refugee," 8 U.S.C. § 1158(b)(1)(A)—that is, to an alien "who is unable or unwilling to return to . . . [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). The burden of proof is on the applicant to establish his refugee status. 8 C.F.R. §

1208.13(b). And though an applicant who establishes past persecution is presumed to have a well-founded fear of persecution, that presumption may be rebutted if the government demonstrates there has been a fundamental change in country conditions such that the applicant's fear of being persecuted if returned to his home country is no longer well-founded. *See id.* §1208.13(b)(1)(i)(A).

The IJ found Cacani's testimony not credible because, among other things: the testimony regarding the interrogations was vague; Cacani presented no corroborating evidence of his DP membership, aside from a partially-translated membership card; the "activities" Cacani performed for the DP were not likely to have caused him problems; and Cacani's testimony contradicted the Albanian country reports. We need not evaluate the adverse-credibility determination, however, because we are convinced that conditions in Albania "have changed enough to where [Cacani] no longer has a well-founded fear of being persecuted in [Albania]." *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 (6th Cir. 2004); *see id.* at 622 ("Although we think that Petitioner may have a valid claim that the IJ's adverse credibility determination was erroneous, we nevertheless choose not to resolve this issue because we are satisfied that Petitioner failed to establish that he has a well-founded fear of persecution.").

In finding that conditions in Albania had changed, the IJ referenced the Department of State's 2001 Profile of Asylum Claims and Country Conditions for Albania. That document states:

> With the Socialist Party currently leading a coalition government, it is highly unlikely in today's circumstances that many applicants will have credible claims to political persecution. . . . There is virtually no evidence that individuals are targeted

> for mistreatment on political grounds. Far more prevalent is organized and amateur crime. . . . All political parties have been active in most of the country without a pattern of mistreatment, even during the dark days of 1997.

Though we have recognized "that State Department reports may be problematic sources on which to rely," *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004), we have adopted "the view that such reports are generally the best source of information on conditions in foreign nations." *Id.* (quotation omitted). And several recent cases from this court have held that changed county conditions in Albania rebut the presumption that an applicant "would be subject to future persecution upon removal or that he could have a well-founded fear of such future persecution." *Gjelaj v. Gonzales*, No. 05-3204, 2006 U.S. App. LEXIS 11782, at *13 (6th Cir. May 11, 2006); *see Liti v. Gonzales*, 411 F.3d 631, 639-40 (6th Cir. 2005) (finding changed circumstances and holding that, "in light of the fundamentally changed conditions in Albania, the Litis failed to satisfy their burden of demonstrating a well-founded fear of future persecution if they were to return"); *Mullai*, 385 F.3d at 639 (noting that, with respect to an alien who entered the United States in October 1996, "changed country conditions rebut the presumption of a well-founded fear of future persecution in Albania"); *Linadi v. Gonzales*, 167 Fed. Appx. 515, 518 (6th Cir. 2006) ("Finally, the IJ correctly took note of the changed conditions in Albania, citing a State Department report from 2001 as evidence . . . ."); *see also Prifti v. Gonzales*, No. 04-3909, 2005 U.S. App. LEXIS 25144, at *5-6 (6th Cir. Nov. 18, 2005); *Palaj v. INS*, 134 Fed. Appx. 29, 33 (6th Cir. 2005).

Cacani argues that in finding changed county conditions the IJ "erroneously focused on just one report of many . . . in the record." But the reports Cacani points to—other State Department documents and "reports from reputable human rights organizations"—do not compel us to conclude that the IJ's determination was wrong. First, the pre-2001 reports do nothing to rebut the manner in which the 2001 Profile, issued in May 2001, describes the changed conditions in Albania. Second, though many of these reports paint an unpleasant picture of the Albanian government's human rights record, they do not demonstrate that Cacani would face the requisite individualized threat of harm based on his political opinion. *See Daneshvar*, 355 F.3d at 625 (denying petition for review because although "many Iranian citizens may live in fear of persecution by the Islamic regime," the petitioner "presented no credible evidence that he [would] be singled out for different treatment if he is deported back to Iran"). Accordingly, we deny the petition for review with respect to Cacani's asylum claim.

## B. Withholding of Removal and CAT Relief

Cacani also seeks review of the IJ's denial of withholding of removal under the Act. To obtain such relief, Cacani must show by a clear probability that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. *See Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998); 8 U.S.C. § 1231(b)(3)(A). But "because the lesser standard for establishing asylum eligibility eludes [Cacani,

he necessarily] cannot meet the more stringent requirements for withholding of removal." *Mullai*, 385 F.3d at 639. We thus deny the petition for review on this issue.

To obtain withholding relief under the CAT, Cacani bears the burden of establishing that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Cacani rests his request for CAT relief on the same ground as his request for asylum—that he would be mistreated in Albania because of his political opinion. Cacani argues that because he "suffered numerous . . . incidents of police abuse" and because there is "voluminous background material [in the record] regarding ill-treatment by the police," he carried his burden of showing that he will be tortured if returned to Albania. But we have already held that Cacani failed to establish a well-founded fear of persecution because of his political opinion. It follows that he cannot make the more stringent showing required for obtaining withholding relief under the CAT, and we deny the petition for review on this claim. *See Liti*, 411 F.3d at 641 ("[B]ecause the Litis failed to establish eligibility for asylum, they also cannot meet the heightened requirements for relief under CAT."); *Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004) ("Since Yu does not establish eligibility for asylum, he does not meet the more stringent standards required for withholding or the Torture Convention.").

IV.

For these reasons we deny the petition for review.